## Zappardino Estate

Before Klein, P. J., Lefever, Saylor, Shoyer and Burke, JJ.

*A. A. Guarino*, for Joseph Zappardino.

*Charles P. Mirarchi, Jr.*, for William Zappardino.

SHOYER, J., March 20, 1964.—The two brothers and three sisters, being all the children of Santa Zappardino, decedent, have been feuding among themselves and have taken sides concerning the distribution of her estate. One son, Joseph, has excepted to the denial of his claim for the family exemption. The other son, William, to whom letters of administration were granted by the Register of Wills, excepts to the action of the learned auditing judge in reducing the credit claimed in the account for funeral expenses from $1,449 to $1,-200, and then surcharging him as accountant for the difference of $249.

Decedent maintained her own home with her husband at 1016 Annin Street until his death on January 21, 1961. Thereafter, until her death intestate on September 4, 1961, she slept at the home of her son, Joseph, or occasionally at the home of William, his brother.

On competent but conflicting evidence, the learned auditing judge found that decedent kept gas, electricity and heat on in her own fully furnished home which she visited regularly several times a week. Joseph would drive her there from his own home on Morris Street, close by, and would stop to pick her up at day's end when he was returning from work. She was a diabetic and would prepare many of her own meals on Annin Street, stating that because of her diabetes she could not eat at Joseph's.

The claim for the family exemption is brought under section 211 of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.211, which, as amended prior to decedent's death, provided that in the absence of a surviving spouse ". . . then such children as are members of the same household as the decedent, may retain or claim as an exemption, either real or personal prop-

erty, or both . . . to the value of one thousand dollars."

The answer to the problem presented by Joseph's claim depends on the meaning of the word "household". Can a decedent have more than one household? We think not. Otherwise a widowed parent might conceivably establish as many households as there were married children living in their own homes and receiving the parent in turn as a guest for a month, or some other regularly rotated period.

The commission which approved the final draft of the Fiduciaries Act of 1949, deliberately substituted "household" for "part of the family", which was the phrase used in the earlier exemption act of June 7, 1917, P. L. 447. The commission commented that "case law has established that the family relationship must exist. . . So also it has been determined by case law that children must form a part of the decedent's household to be entitled to the exemption. Children are, of course, a part of the family regardless of where they live. The determining feature under case law is whether they are a part of the household, and therefore this word has been used."

Later, "members of the same household" was substituted for "decedent's household" by the statutory amendment of February 23, 1956, P. L. (1955) 1084, sec. 2. This was for the purpose of making it clear that a child or spouse living in the same household as decedent is entitled to the exemption regardless of who may be the technical head of the household: Shank Estate, 399 Pa. 656.

On claimant rested the burden of establishing his right to this statutory gratuity: Caprioli's Estate, 9 Chester 172, 9 Fiduc. Rep. 434, 438, 439. The significant fact which sustained the son's claim in Shank Estate, supra, page 659, was that "the homes of the decedent and the claimant were one and the same." Here the preponderating facts are that decedent never

abandoned her own home but maintained the same even until her death. It was not enough for Joseph to show that his mother was treated as part of his family while she stayed overnight at his home. On the findings of the learned auditing judge, which are fully supported by the evidence, claimant failed to sustain his burden of proof.

We also approve Judge Burke's conclusion of law that a decedent cannot maintain more than one household at a time as being within the purview of section 211. To hold otherwise would pervert the humane and beneficial purposes of the exemption statute.

With regard to the action of the learned auditing judge in reducing the credit for funeral expenses from $1,449 to $1,200, the reduction was perfectly proper because of the modest size of the estate—$15,332.28—and decedent's station in life. The credit might well have been reduced even more, but since the sisters who originally complained have filed no exceptions, we shall make no further reduction.

William, the administrator, has strenuously complained that the surcharge was not directed at his brother also, so that they would share the reduction equally just as they had joined in ordering the funeral together. The amount in controversy is small, and because this court sits as a court of equity, there is temptation to authorize the personal representative to set off this individual claim against his brother's distributive share. The rule is too firmly ingrained, however, that all such set-offs against the share of a distributee must be supported by assignment or formal attachment. See Kenin's Estate, 346 Pa. 127, 130; Wentz's Estate, 225 Pa. 566, 568; Hunter's O. C. Commonplace Book, 2d ed., vol. II, p. 109, §11(e). Such requisite authority is lacking here.

For the above stated reasons the exceptions are dismissed, and the adjudication is confirmed absolutely.